UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

EDGEWOOD MANOR APARTMENT HOMES LLC,
SOUTHLAND MANAGEMENT CORPORATION,

    Plaintiffs,

    v.    Case No. 08-C-0920

RSUI INDEMNITY COMPANY,

    Defendant.

ORDER DENYING MOTION TO DISMISS/FOR JUDGMENT ON THE PLEADINGS
(DOC. 19)

On October 28, 2008, plaintiffs, Edgewood Manor Apartment Homes LLC and Southland Management Corporation, filed this lawsuit against defendant, RSUI Indemnity Company, asserting (1) that RSUI has denied its contractual obligation to pay repair/replacement and code upgrade costs under an insurance policy and should be obligated to pay over $1.5 million, and (2) that RSUI's denial of its obligation to pay pursuant to the policy was in bad faith, justifying compensatory and punitive damages, along with attorneys' fees. RSUI answered the complaint on November 26, 2008. More than two months later, on January 27, 2009, it filed a motion to dismiss, citing Fed. R. Civ. P. 12(b)(6).

At the outset, plaintiffs contend that RSUI's motion should be denied as untimely, as it was submitted after the filing of the answer. Any Rule 12(b) motion "must be made *before pleading* if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). However, a party may assert that a complaint fails to state a claim upon which relief may be granted either before a responsive pleading is filed, Fed. R. Civ.

P. 12(b)(6), or after, Fed. R. Civ. P. 12(c), (h)(2)(B), and may do so even at trial, Fed. R. Civ. P. 12(h)(2)(C). Rule 12(c) permits a motion for judgment after the parties have filed the complaint and answer. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see* Fed. R. Civ. P. 12(c).

The legal standard for Rule 12(b)(6) and 12(c) motions is the same. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. All facts alleged in the complaint are taken as true, with all reasonable inferences drawn in the plaintiff's favor. *Pisciotta*, 499 F.3d at 633. However, facts set forth in the complaint that undermine the plaintiff's claim are not ignored. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Pisciotta*, 499 F.3d at 633. Factual allegations must be enough to rise above the speculative level, *Pisciotta*, 499 F.3d at 633, meaning that enough facts must be set forth to state a claim that is plausible on its face, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The essence of a Rule 12(b)(6) or 12(c) motion is that even assuming all of a plaintiff's facts are accurate, the plaintiff has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

Because the arguments RSUI raises may be made in a Rule 12(c) or summary judgment motion, the court will not deny the motion to dismiss on the ground that it improperly cites Rule 12(b)(6) as its basis. Instead, the court will treat the motion as though it is a motion for judgment on the pleadings under Rule 12(c).

2

Next, the court must discuss RSUI's supplemental brief. RSUI filed its motion to dismiss on January 27, 2009. Under Civil L.R. 7.1(b), plaintiffs had twenty-one days after service of the defendant's motion to file a brief in opposition. Generally, service is considered to add three days. *See* Fed. R. Civ. P. 6(d), 5(b)(2)(E). Therefore, a brief in response was due about February 20, although plaintiffs' counsel believed the brief was due on Tuesday, February 17.

At 4:14 p.m. on Friday, February 13, 2009, RSUI filed a "supplemental" brief in support of its motion to dismiss. In an affidavit, plaintiffs' counsel submits that he was not in the office. Monday, February 16, was Presidents' Day, and the court was closed. However, plaintiffs' counsel called defense counsel that Monday and left a telephone message. The call was returned the morning of February 17, the day plaintiffs' counsel believed his brief to be due, and he had to be out of the office that afternoon. Although defense counsel indicated he would permit plaintiffs three weeks from February 13 (the date of the supplemental brief) to file the opposition brief, it was unclear before plaintiffs' counsel left his office whether RSUI, the client, had agreed to extensions of time. As a result, plaintiffs' counsel filed his opposition brief on February 17, objecting to the supplemental brief and asking that it be stricken from the record.

Defense counsel replied with a letter indicating that at some point on the afternoon of February 17 he received approval from his client to sign a stipulation and called plaintiffs' counsel. Because plaintiffs' counsel was not in, defense counsel left a message saying that RSUI had no objection to an extension of the deadline. Thus, RSUI has no objection to plaintiffs filing a response to its motion to dismiss. Moreover, RSUI

3

believes it supplemental memorandum supporting dismissal should not be stricken inasmuch as it agrees that the plaintiffs may have an extension of time.

Two problems arise from RSUI's position. First, its supplemental brief was never permitted by the court. Civil L.R. 7.1(b)(1) and (2) provide for a motion with a supporting brief, a brief in response, and a brief in reply. No additional briefs are contemplated or permitted by the rule, especially ones that raise new issues as RSUI's does. Also, RSUI never asked for leave of court to file its supplemental brief. Hence, it is an improper filing.

Second, RSUI's willingness to permit an extension of time never changed the due date for plaintiffs' opposition brief. RSUI could not "grant" plaintiffs additional time for their reply brief. The deadline for the brief was a court deadline, and only the court could grant an extension. No one asked the court to grant an extension of time for the plaintiffs to respond to RSUI's submission. Therefore, notwithstanding RSUI's willingness to allow plaintiffs more time to respond to the supplemental brief, plaintiffs were completely reasonable in believing they had to file their opposition brief the week of February 17, 2009. Thus, RSUI's supplemental brief will not be considered by the court.

Generally, in a diversity jurisdiction case a federal court must apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Doe v. Roe No. 1*, 52 F.3d 151, 154 (7th Cir. 1995). But when the forum state's choice of law rules point to another state's substantive law, the federal court applies the other state's law. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co.*, 544 F.3d 752, 759 (7th Cir. 2008). Consequently, this court must apply a state's substantive law as enacted by the state legislature and as interpreted or declared by the state's highest court. *See*

4

*Home Valu, Inc. v. Pep Boys—Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *see also Erie*, 304 U.S. at 78-79.

Applying Wisconsin law first, this court must consider the Wisconsin "borrowing statute" regarding the statute of limitations. *See Abraham v. Gen. Cas. Co.*, 217 Wis. 2d 294, 300-02 (1998); *Guertin v. Harbour Assurance Co. of Bermuda, Ltd.*, 141 Wis. 2d 622, 624 n.1 (1987). The borrowing statute adopts the limitations rule of another state in certain circumstances, applying the other state's rule as if it were Wisconsin's. *Guertin*, 141 Wis. 2d at 624 n.1. Pursuant to Wis. Stat. § 893.07(1), when "an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state." This borrowing statute applies to contract as well as tort actions. *Abraham*, 217 Wis. 2d at 300-02. The court must apply this statute before considering other conflicts-of-law or choice-of-law issues. *See Faigin v. Doubleday Dell Publ'g Group, Inc.*, 98 F.3d 268, 270 (7th Cir. 1996); *Guertin*, 141 Wis. 2d at 630-31.

In *Guertin* and *Abraham* the Supreme Court of Wisconsin rejected any "center of gravity" or "significant contacts" test for determining what constitutes a "foreign cause of action" under § 893.07(1). *Abraham*, 217 Wis. 2d at 307-08; *Guertin*, 141 Wis. 2d at 626-32. It held that for a contract claim, a foreign cause of action under § 893.07(1) is one for which "the final significant event giving rise to a suable claim occurs outside the state of Wisconsin." *Abraham*, 217 Wis. 2d at 311. For a tort claim, a foreign cause of action is one in which the alleged injury occurred out-of-state. *Id.* at 304; *Guertin*, 141 Wis. 2d at 630-32.

5

RSUI argues that the plaintiffs' claims are Mississippi causes of action and that under the applicable Mississippi statute of limitations and the contract at issue plaintiffs' time for filing their claims expired three years after Hurricane Katrina, i.e., on August 29, 2008.

For the contract claim, the key facts are those regarding the alleged breach of the contract, not its formation or execution.[1] In that regard, Southland, through its adjuster Richard West, notified the adjuster for RSUI, Joel Steber, that Southland intended to rebuild the property and would submit a claim for repair/replacement and code upgrade proceeds. (Compl. ¶ 16.) On or about December 18, 2007, Southland, again through adjuster West, notified Steber of Southland's intent to sell the property to Edgewood. Shortly thereafter, RSUI, through Steber, informed Southland that any assignment was precluded under the policy. (Compl. ¶¶ 17, 18.) In early January 2008, Southland asked for clarification of RSUI's position. (Compl. ¶ 19.) On or about March 12, 2008, RSUI, again through Steber, responded in writing to Southland that any sale of the property would terminate Southland's right to repair or replacement proceeds. (Compl. ¶ 21.) Steber's letter came from an office in Georgia and was sent to Southland's adjuster, West, at an address in Georgia. (Compl. Ex. C.) RSUI's principal place of business was in Georgia, so presumably decisions about Southland's communications were made by RSUI in Georgia and then conveyed to its Georgia-located adjuster.

---

[1] Southland, a Mississippi corporation with its principal place of business in Mississippi, obtained the policy from RSUI, a New Hampshire corporation with its principal place of business in Georgia, for the period of December 1, 2004, to December 1, 2005. (Compl. ¶¶ 2, 3, 7.) The insured property is located in Mississippi. Thus, at the time of Hurricane Katrina, a Mississippi corporation owned the insured Mississippi property. However, most of these types of contacts are not material to the present inquiry. *See Abraham*, 217 Wis. 2d at 307-08. The question is where the alleged breach of contract and injury occurred.

6

Around this time, Southland appointed Edgewood its attorney-in-fact to deal directly with RSUI regarding the property. (Compl. ¶ 20.) It is unclear if or when Southland sold the property to Edgewood. (*Compare* Compl. Ex. D at 1 ("Southland's future rights are extinguished by the conveyance . . . .") *with* Compl. ¶ 22 (indicating that Edgewood was acting pursuant to the appointment as attorney-in-fact as of July 9, 2008).) On July 29, 2008, RSUI denied Edgewood's July 2008 request for payment. (Compl. ¶¶ 22, 23, Ex. D.) RSUI's denial letter came from its attorney in New York, New York, and was sent to Edgewood's attorney in Wisconsin. (Compl. Ex. D.)

Southland and Edgewood filed this lawsuit on October 28, 2008, within one year of all the following: RSUI's verbal indication that it would not pay claims under the insurance policy if Southland sold the covered property to Edgewood, the written notification that it would not pay on the policy if Southland sold the covered property to Edgewood, and the written indication after Edgewood was appointed attorney-in-fact that RSUI would not pay claims under the policy.

RSUI argues a choice only between Mississippi and Wisconsin as the site of the contract cause of action. In Mississippi, the contract claim must be filed within three years after the cause of action accrued, Miss. Code Ann. § 15-1-49, and a cause of action for breach of contract accrues at the time of the breach. *See C&I Entm't, LLC v. Fid. & Deposit Co.*, No. 1:08CV16, 2008 WL 4755413 (N.D. Miss. Oct. 27, 2008) ("[L]iability did not arise until the denial of the claim."); *CitiFinancial Mortgage Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007) ("In a contractual claim, a cause of action accrues on the date of actual injury, the date the facts occurred which enable the Plaintiffs to bring a cause of action."). Mississippi law prohibits contracts between parties that seek to change the

7

statute of limitations period. Miss. Code Ann. § 15-1-5. However, RSUI argues that parties are not prohibited from altering the date on which a cause of action accrues, citing *Exxon Corp. v. Crosby-Miss. Resources, Ltd.*, 775 F. Supp. 969 (S.D. Miss. 1991), *aff'd in part and rev'd on other grounds*, 40 F.3d 1474 (1995). And, according to RSUI, the insurance policy at issue, at paragraph 5 of the Excess Physical Damage Coverage Form of the policy (Compl. Ex. A at Excess Physical Damage Coverage Form ¶ 5), incorporates the same terms and conditions as Southland's primary insurance policy, including the provision that no one could file a lawsuit on the primary policy unless "[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred" (Compl. Ex. B at Commercial Property Conditions ¶ D.2.). Thus, RSUI maintains that the primary policy changed the accrual date of the plaintiffs' claim to the date of Hurricane Katrina, and three years after that date (the period after accrual cannot be altered by Miss. Code Ann. 15-1-5) was August 29, 2008.

*Exxon* does not say that parties may contract for a different accrual date for a cause of action. Instead, the *Exxon* court found that parties could contract for time-based conditions precedent that must be satisfied before a contracting party may challenge billing statements. *See id.* at 975-76. Permitting conditions precedent to accrual is not necessarily equivalent to permitting an outright change of the accrual date. *See Exxon Corp. v. Crosby-Miss. Resources, Ltd.*, 40 F.3d 1474, 1485 (1995) ("[This provision is different from other provisions which the Mississippi Supreme Court has struck down because it does not completely foreclose CMR from bringing suit against Exxon. . . . If it is theoretically possible that paragraph four could be interpreted as foreclosing a claim before the applicable statute of limitations has run—a matter we need not decide—this is

8

not such a case."). Plus, the case is not a statement by the Mississippi Supreme Court. However, a deeper analysis of Mississippi law on this point is not warranted. Inasmuch as it appears to this court that the applicable statute of limitations is not that of Mississippi, but rather that of Georgia.

According to *Abraham*, the location of the contract cause of action is the state in which "the final significant event" giving rise to the claim occurred. 217 Wis. 2d at 311. *Abraham* left in question the location of a breach of contract involving parties in multiple states, as both the insurer and the insured in that case were located in Wisconsin. *See* 217 Wis. 2d at 314. The concurring opinion recognized that the court provided little guidance for future cases involving multiple states. "[I]f the breach of contract is the last significant event . . . where does that breach occur? Does it occur in the state where the party in breach is located? Does it occur in the state wherein the injured party resides? . . . Does it occur in the state from which the breach is communicated?" *Id.* at 315 (Bradley, J., concurring).

*Abraham* cited as the basis for its "final significant event" test the district court decision of *Terranova v. Terranova*, 883 F. Supp.1273 (W.D. Wis. 1995). The *Abraham* court said it was "persuaded by the reasoning employed in *Terranova*," it agreed with the reasoning of the *Terranova* court, and it "adopt[ed] its standard for all causes of action sounding in contract." *Abraham*, 217 Wis. 2d at 309-811. The *Terranova* plaintiffs were from California, while the defendants were from Wisconsin. The plaintiffs had demanded that defendants indemnify them under the terms of a contract, and the defendants had rejected the demand. Judge Barbara B. Crabb determined that the alleged breach of contract occurred in Wisconsin, where the defendants rejected the demand for

9

indemnification. 883 F. Supp. at 1281. Therefore, the breach of contract claim was not a foreign cause of action under Wis. Stat. § 893.07 and was subject to Wisconsin's statute of limitations. *Id.*

Further, the Wisconsin Court of Appeals in a multi-state case reached a similar decision. *See Ristow v. Threadneedle Ins. Co.*, 220 Wis. 2d 644 (1998). The Ristows, Wisconsin residents, asserted a breach of contract claim for defendant's failure to send them the check required by a settlement agreement and Threadneedle's office was located in South Carolina. *Id. at* 652. The court found that the final significant event in the breach was Threadneedle's failure to send the settlement check from South Carolina to Wisconsin. *Id.* at 652-53. Thus, the court applied South Carolina's statute of limitations under Wisconsin's borrowing statute.

This court agrees with Judge Crabb in *Terranova* that the final significant event regarding a breach of contract claim is the act by the party rejecting the other's demand for performance. *Ristow* is in accord, as the focus was on the location of the alleged conduct (or failure to act) that caused the breach. This court is unconvinced that the location of the breach could be where the *recipient* of the rejection or breach is located. Today, with e-mail and mobile devices, a rejection letter communicated electronically from one state to another may be received just about anywhere. The key sites are where the rejection determination is made and communicated from.

Here, the final significant event giving rise to plaintiffs' contract claim occurred in Georgia, at RSUI's office or the office of its adjuster, when RSUI rejected Southland and/or Edgewood's request for payment under its insurance policy. The verbal and written rejections communicated to Southland's adjuster occurred fully within Georgia, inasmuch

10

as Southland's adjuster was in Georgia as well. That RSUI's rejection letter to Edgewood was sent to Wisconsin from its New York attorney does not alter this conclusion because the attorney was acting on behalf of the Georgia client.

Before turning to the second cause of action, the court notes that RSUI's motion and brief did not address the Georgia statute of limitations period. Hence, the court is unpersuaded that the first cause of action is time-barred.

The second cause of action charging bad faith denial of obligations under an insurance policy, was brought by both plaintiffs. (Compl. ¶¶ 33-35.) However, in responding to the motion to dismiss, the plaintiffs concede that Edgewood is not pursuing such a claim: "[T]he bad faith claim is brought by the insured, Southland Management." (Pls.' Mem. of Law in Opp'n at 6.) Therefore, the court finds that Edgewood has abandoned any bad faith claim, and will address only the claim brought by Southland.

Bad faith denial of insurance obligations is an intentional tort, separate from a breach of contract claim. *Warmka v. Hartland Cicero Mut. Ins. Co.*, 136 Wis. 2d 31, 33-35 (1987). And, as stated above, tort claims are foreign only if the injury occurred outside the state. *Abraham*, 217 Wis. 2d at 304. Judge Crabb in *Terranova* recognized that a plaintiff in one case may assert tort claims arising from a different location than contract claims for purposes of the borrowing statute. *See* 883 F. Supp. at 1281 (finding that the tort claims were subject to California's statute of limitations and the contract claims were subject to Wisconsin's). Further, she determined that in a case involving only economic, and not physical, injury, the state of the cause of action is where the economic impact of the defendant's conduct was felt, normally the plaintiff's residence. *Id.* at 1278-79. This court agrees.

11

As to this claim, RSUI is right that Mississippi law applies. Mississippi is where Southland felt the economic impact of RSUI's actions. However, RSUI fails to convince the court that this claim is time-barred. RSUI's brief focuses more on the merits of this claim—that Southland cannot recover tort damages if it cannot win on its contractual claim. RSUI mentions only briefly, without citation to any statute or case, that a three-year limitations period has run on this claim, but the court cannot rely on that one sentence for any ruling in RSUI's favor. Moreover, RSUI has not presented this court with sufficient statutory or case law regarding the limitations period and accrual date for a bad faith tort claim. The opinion of *Young v. Southern Farm Bureau Life Insurance Co.,* 592 So. 2d 103, 107 (Miss. 1991), suggests that the claim accrued when RSUI notified either Southern or Edgewood that it was declining to pay under its insurance policy, but it is not up to the court to do RSUI's research on the matter.

On the merits, RSUI argues that there are no grounds for bad faith damages because (1) it paid over $3.5 million under other provisions of the insurance policy, and (2) a condition precedent to its contract has not been met because the insurance policy requires actual repair or replacement to occur before any obligation to pay arises. The first argument is a matter of fact and is not ripe for consideration on a motion to dismiss. Moreover, the Complaint does not contain any allegation regarding the amounts RSUI has paid. As for the second argument, Southland offers that the condition precedent is excused because of RSUI's announced decision not to pay benefits, and RSUI has not demonstrated when conditions precedent are or are not excused under applicable law.

Therefore, for the above-stated reasons,

12

IT IS ORDERED that RSUI's supplemental brief filed February 12, 2009 (Doc. 27), will not be considered by the court regarding RSUI's motion to dismiss.

IT IS ORDERED that RSUI's Rule 12(b)(6) motion to dismiss (Doc. 19), converted to a Rule 12(c) motion for judgment on the pleadings, is denied.

IT IS ORDERED that Edgewood's bad faith claim is dismissed.

The court will decide the cross-motions for summary judgment in due course.

Dated at Milwaukee, Wisconsin, this 8th day of March, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE