UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

EDGEWOOD MANOR APARTMENT HOMES LLC,
SOUTHLAND MANAGEMENT CORPORATION,

   Plaintiffs,

   v.         Case No. 08-C-0920

RSUI INDEMNITY COMPANY,

   Defendant.

---

ORDER TO SHOW CAUSE
AND ORDER DENYING MOTION FOR PROTECTIVE ORDER (DOC. # 64)

Pending before the court is the motion of plaintiff Edgewood Manor Apartment Homes LLC for a protective order. Edgewood Manor seeks the continued sealing of its supplemental statement of citizenship (Doc. 67).

In their complaint, the plaintiffs assert subject matter jurisdiction based on diversity of citizenship. (Compl. ¶ 5.) The court's order of December 22, 2009, noted that the complaint was deficient as to Edgewood Manor's citizenship because the entity is an LLC and plaintiffs failed to assert the citizenship of each of the LLC's members. Hence, Edgewood Manor was directed to identify its citizenship. It responded on December 29 with an incomplete statement; which failed to provide the principal place of business of member Gorman & Company, Inc., and indicated that the other two members of the LLC were another limited liability company and a limited partnership. Counsel advised that the members or partners of both are related to an entity named Centerline Asset Managers XXXVII LLC. Then counsel stated something remarkable: "Plaintiffs have requested citizenship information with respect to the members of Centerline Asset Managers XXXVII

LLC and requests [sic] additional time to comply with the court's order." (Stmt. of Citizenship at 2.)

This statement is remarkable in two respects. First, it is apparent that Edgewood Manor's management does not know the identities of their owners. Second, and more important for present purposes, the above statement establishes that plaintiff's counsel failed to inquire into the matter of citizenship before filing the complaint.

An attorney filing a pleading in this court, "certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*," the claims or other legal contentions are warranted by existing law. Fed. R. Civ. P. 11(b) (emphasis added). If the plaintiffs' counsel had no information regarding the identities and citizenship of the members of the various LLCs and partnerships behind Edgewood Manor, counsel had no idea whether there is diversity of citizenship between the plaintiffs and defendant. Yet, counsel stated boldly in the complaint that "[t]here is a diversity of citizenship between the above-named parties and, therefore, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332." (Compl. ¶ 5.)

For many years the Seventh Circuit has emphasized the need to assert properly the jurisdiction of LLCs and LPs and the need for counsel to do the research necessary to make such assertions. Numerous Seventh Circuit cases make it clear that LLCs and LPs are not treated like corporations for diversity jurisdiction purposes. Instead, the citizenship of an LLC is the citizenship of its members and the citizenship of an LP is the citizenship of its partners, general and limited. *See, e.g.*, *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 677-78 (7th Cir. 2006)*; BondPro Corp. v. Siemens Power Generation, Inc.*, 466 F.3d 562 (7th

2

Cir. 2006); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002); *Wise v. Wachovia Securities, LLC*, 450 F.3d 265 (7th Cir. 2006); *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003); *Guar. Nat'l Title Co. v. J.E.G. Assocs.*, 101 F.3d 57, 59 (7th Cir. 1996). If the members of an LLC or partners of an LP have members, the citizenship of all of those members or partners must be set forth as well. *Thomas*, 487 F.3d at 534; *Meyerson v. Harrah's E. Chicago Casino*, 200 F.3d 616, 617 (7th Cir. 2002) ("[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be."). The Seventh Circuit has "repeatedly warned that when one party to the litigation is someone other than a natural person suing in her own capacity, 'a jurisdictional warning flag should go up.'" *Thomas*, 487 F.3d at 534.

More than five years before the complaint in this case was filed, Circuit Judge Frank Easterbrook chastised an attorney who filed a complaint alleging that the plaintiff was incorporated in Missouri when the entity was actually incorporated in Illinois, thereby destroying diversity and requiring dismissal after appeal—and a jury trial no less:

> At oral argument we directed the parties to file supplemental memoranda addressing jurisdictional details. Plaintiffs' response concedes that Belleville Catering is (and always has been) incorporated in Illinois. Counsel tells us that, because the lease between Belleville Catering and Champaign Market Place refers to Belleville Catering as "a Missouri corporation," he assumed that it must be one. That confesses a violation of Fed. R. Civ. P. 11. . . . [C]ounsel must secure jurisdictional details from original sources before making formal allegations.

*Belleville Catering*, 350 F.3d at 692-93. Defense counsel in *Belleville Catering* did not escape blame, either. They had agreed with the plaintiffs' jurisdictional statement and had

treated their own LLC citizenship like a corporation's. *Id.*[1] When pressed to identify the members of the LLC, defense counsel stated that one of the LLC's members was another LLC whose members maintained confidentiality. Judge Easterbrook commented that "[i]t is not possible to litigate under the diversity jurisdiction with details kept confidential from the judiciary." *Id.* at 693. He added that "no entity that claims confidentiality for its members' identities and citizenships is well situated to assert that it could believe, in good faith, that complete diversity has been established." *Id.* at 694.

The Seventh Circuit has sanctioned counsel for insufficient jurisdictional statements, to the tune of $1,000 in *Thomas*, 487 F.3d at 535. In *Belleville Catering*, the court directed counsel to bring the suit to conclusion in state court without further charge.

Rule 11(c)(1) provides a ground for sanctions: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Hence, the court may order an attorney, law firm, or party to show cause why conduct in this case has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(3).

Next is the motion for protective order. In compliance with this court's direction, Edgewood Manor filed a redacted supplemental statement of citizenship for public filing, indicating that the members and limited partners of the entities underlying Edgewood Manor are citizens of New York, New Jersey, Delaware, Illinois, Virginia, and California. According to the complaint, plaintiff Southland Management Corporation is a

---

[1]Defendants in the present case did not so err. In response to paragraph 5 of the complaint, they denied knowledge or information sufficient to form a belief regarding the allegations and referred any question of law to the court. (Answer ¶ 5.)

4

citizen of Mississippi. As confirmed in the Answer, defendant RSUI Indemnity Company is a citizen of New Hampshire and Georgia. Thus, diversity between the parties does exist.

The redacted supplemental statement of citizenship omits the names and addresses of the individuals who are members and limited partners of the entities behind Edgewood Manor. An unredacted supplemental statement of citizenship under seal by Edgewood Manor, in conjunction with its motion for protective order, asks that the supplemental statement remain sealed. The supplemental statement of citizenship and motion indicate that one of the members of Edgewood Manor is a limited partnership with eight limited partners who wish their identities to remain shielded from public view. The general partner is an LLC, whose one member is another LLC, and *that* LLC is comprised of five persons who wish their identities to remain shielded from public view. A review of the unredacted supplemental statement of citizenship reveals that none of the eight limited partners overlap with the five members, so there are thirteen individuals or corporations seeking to remain hidden.

Edgewood Manor likens the members' and limited partners' names to trade secrets (Mot. for Protective Order at 2), noting that the public's interest in what goes on in a judicial proceeding does not always trump property and privacy interests of the litigants (*id.* (citing *County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 740 (7th Cir. 2007)).

While a comparison to trade secrets has some appeal, the interests underlying protection of trade secrets versus members' or partners' identities differ. Public knowledge of trade secrets may harm an entity financially if competitors receive that information. But here, how would the members or partners several levels behind a plaintiff

5

be harmed?  Edgewood Manor does not say.[2]  It states that the limited partners and

individual members are investors and that their identity is "proprietary information."  (Mot.

for Protective Order at 2.)  Edgewood Manor argues that

> [t]he identities of those investor members are not at issue in
> this litigation and Plaintiff has provided citizenship information
> with respect to each of the investor members so that diversity
> jurisdiction may be established.
>     Moreover, good cause exists to protect proprietary
> information and taxpayer privacy. More specifically, Centerline
> Capital Group sponsors private funds that invest in projects
> that generate federal low income housing tax credits among
> other tax benefits.  The syndication of such tax credits is a
> highly competitive business. Accordingly, the public disclosure
> of the identities of Centerline's investors in a specified fund
> would be detrimental to its business.  In addition, Centerline's
> investors expect it to exercise a high degree of care in
> protecting information about their investments.

(*Id.* at 1-2.)

It is unclear whether plaintiffs' reference to the "Centerline Capital Group"

refers to the informal grouping of the four Centerline entities behind Edgewood

Manor—Centerline Corporate Partners XXXVII LP, Centerline Corporate XXXVII SLP LLC,

Centerline Asset Managers XXXVIII LLC, and Centerline GP Holdings LLC—or to some

third-party Centerline entity which has not been revealed in this case.

Regardless, the four Centerline entities behind Edgewood Manor have

availed themselves of the opportunity to proceed in this court, which is open to the public

ordinarily, thus trumping the personal desires of their partners or members to remain

---

[2]In *Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002), the
court observed that motions to keep certain matters under seal must be specific; generic claims of
commercial harm are insufficient.  The court pointed out that the parties had failed to explain why
disclosure would harm a party's competitive position or why that sort of harm would be a legal justification
for secrecy in litigation. *Id.* at 547.  Here, Edgewood Manor fails to specify the harm its members and
partners would face if their identities are revealed.

private.  The present situation is more akin to the prosecution of a lawsuit using a

pseudonym.  Even where, as here, the defendant does not object,

> the privilege of suing or defending under a fictitious name
> should not be granted automatically even if the opposing party
> does not object.  The use of fictitious names is disfavored and
> the judge has an independent duty to determine whether
> exceptional circumstances justify such a departure from the
> normal method of proceeding in federal courts.  Rule 10(a) of
> the Federal Rules of Civil Procedure, in providing that the
> complaint shall give the names of all the parties to the suit . . .
> instantiates the principle that judicial proceedings, civil as well
> as criminal, are to be conducted in public.  Identifying the
> parties to the proceeding is an important dimension of
> publicness.  The people have a right to know who is using their
> courts.

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997) (citations

omitted); *accord Doe v. City of Chicago*, 360 F.3d 667, 669-70 (7th Cir. 2004).  Moreover,

open judicial proceedings permit public monitoring of court proceedings.  *City of Chicago*,

360 F.3d at 669.  Concealment of a party's identity impedes public access to the facts of

the case, *id.*, including the knowledge of who is using the courts that their tax dollars

support, *Coe v. County of Cook*, 162 F.3d 491, 498 (7th Cir. 1998).

Exceptions to the public exposure of identities in federal court proceedings

exist.  For instance, records may be sealed to protect the identity of an informer, and

fictitious plaintiffs' names are allowed if necessary to protect the privacy of particularly

vulnerable parties or witnesses, such as children or rape victims.  *Blue Cross & Blue Shield*

*United*, 112 F.3d at 872.  The presumption of public identification can be rebutted if the

party establishes that the harm to the party if the information is made public exceeds the

likely harm from concealment.  *City of Chicago*, 360 F.3d at 669.  Also, danger of

retaliation may be a compelling ground for use of a pseudonym.  *Id.*

7

However, the Seventh Circuit has criticized the overuse of fictitious names in federal litigation. *County of Cook*, 162 F.3d at 498. It has suggested that merely because a case involves a medical issue, including the psychiatric disorder of obsessive-compulsive syndrome, does not justify hiding a plaintiff's identity. *Blue Cross & Blue Shield United*, 112 F.3d at 872. Similarly, the embarrassment of a man who engaged in immoral or irresponsible conduct such as impregnating a woman who was not his wife did not provide a sufficient basis for use of a pseudonym in federal litigation. *County of Cook*, 162 F.3d at 498. And the court said further consideration of the pseudonym issue was required on remand regarding a plaintiff who had been videotaped having sex while a minor but was now an adult; anonymity was not guaranteed. *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005).

The Seventh Circuit has stated that "it is essential to put into the record the name and citizenship of each partner." *Guar. Nat'l Title Co.*, 101 F.3d at 58. In response to a party's attempt to keep the identity of its limited partners confidential, the Third Circuit said that "the district court must know who they are and where they are citizens and its need for that information will trump [the party's] policies." *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 207 n.22 (3d Cir. 2007).

Here, the members and partners who comprise Edgewood Manor say merely that they wish to keep their investments and tax benefits private. They point to no specific personal or financial harms they may suffer. They have availed themselves of the use of the federal courts and must be identified. Therefore,

IT IS ORDERED that plaintiffs' motion for protective order (Doc. 64) is denied and the supplemental statement of jurisdiction (Doc. 67) will be unsealed in fourteen days.

8

Where anonymity is inappropriate, a plaintiff may be allowed to dismiss the lawsuit in lieu of revealing his or her identity. *Smith*, 429 F.3d at 710. The fourteen-day delay in unsealing the supplemental statement of jurisdiction permits Edgewood Manor time to make that decision.

IT IS FURTHER ORDERED that counsel for Edgewood Manor appear in person at a hearing before this court on July 12, 2010, at 10:00 AM, and show cause why they should not be sanctioned for violating Rule 11 when filing this action. Counsel for defendant may appear by phone, if at all.

Dated at Milwaukee, Wisconsin, this 14th day of June, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

9