UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

EDGEWOOD MANOR APARTMENT HOMES LLC,
SOUTHLAND MANAGEMENT CORPORATION,

    Plaintiffs,

  v.           Case No. 08-C-0920

RSUI INDEMNITY COMPANY,

    Defendant.

DECISION AND ORDER DENYING MOTION TO VACATE JUDGMENT (DOC. 100)

  During a hearing on July 13, 2011, the court granted RSUI Indemnity Company's oral motion to dismiss the claims of both plaintiffs and judgment dismissing the case was entered the same day.  Plaintiffs, Edgewood Manor Apartment Homes LLC and Southland Management Corporation, now move to vacate that judgment, arguing that the court erred procedurally and substantively.  For the following reasons the motion to vacate will be denied.

  A motion to vacate, i.e., a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e), is not appropriately used to advance arguments or theories that could and should have been made before the district court entered judgment or to present evidence available earlier. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).  Instead, the only grounds for a Rule 59(e) motion are newly discovered evidence, an intervening change in the controlling law, or a manifest error of law.  *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998).  The rule enables a district court to correct its errors and to avoid unnecessary appellate procedures.  *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999).

For convenience, the court will use defined terms such as "RSUI Policy," "Property," and "Edgewood LP" in the manner they were used in the court's decision of March 23, 2011, without restating such definitions. In addition, the court uses "RCV proceeds" to describe the repair and replacement cost value insurance proceeds at issue in this case.

ALLEGED PROCEDURAL ERROR

Plaintiffs first contend that the court erred procedurally. They assert that the hearing was not noticed as one at which dismissal would be discussed, it is unclear what rule RSUI and the court invoked as the basis for dismissal, and RSUI's dismissal motion was oral. None of these reasons are persuasive. Although one unfamiliar with the case could look at the docket and the minutes of the final hearing and question the court's procedure, familiarity with the history of this case would provide ample evidence that plaintiffs had extensive notice of defendant's arguments and the court's concerns such that dismissal was appropriate.

The July 13 hearing was set as a "Status/scheduling conference" (Doc. 91 at 1) and one expected topic of discussion was whether the court should refer the case to mediation. However, before RSUI would agree to mediation it wanted evidence of the assignment of RCV proceeds between the two plaintiffs. That had been RSUI's position for months. Counsel for RSUI so indicated at conferences on March 30, 2011, and May 5, 2011, and much of the May 5 conference involved discussion of plaintiffs' failure to produce any evidence of an assignment of the RCV proceeds from Southland to Edgewood Manor. Indeed, the result of the May 5 conference was an order requiring plaintiffs to "provide to RSUI all materials respecting the sale, assignment or transfer of rights or proceeds under

RSUI's policy relevant to this action and discoverable in this case" (Doc. 96) because plaintiffs had drawn out production of such a document for so long.

Standing to sue is part of the Constitution's case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). For over a year RSUI had challenged and the court had questioned plaintiffs about their standing and individual entitlement to the RCV proceeds, without satisfactory answers. For instance, in the memorandum supporting its motion for summary judgment, RSUI attacked the standing of Edgewood Manor and Southland. In the introduction to the brief, RSUI wrote:

> Edgewood is not an insured under the Policy and RSUI has never contracted with Edgewood. Despite being the crux of Edgewood's alleged rights to Southland's RCV proceeds, Plaintiffs have failed to set forth any admissible evidence as to the existence of, or terms of, any sale or transfer of the subject property to Edgewood, and/or any valid assignment of Southland's rights under the Policy.

(Doc. 34 at 1-2.) RSUI attacked the standing of Edgewood Manor because nothing in the record established Edgewood Manor's entitlement to the RCV proceeds or Southland's entitlement to the same proceeds because the record then suggested that Southland had sold the property at issue before making the repairs or replacement necessary to trigger RSUI's obligation to reimburse those costs. (*Id.* at 15-16.)

Upon initial review of the cross-motions for summary judgment, the court was concerned with plaintiffs' ability to sue in this case and especially concerned regarding Edgewood Manor's standing. Consequently, a status hearing was scheduled on June 24, 2010, the parties were advised to be prepared to address "whether questions of material fact exist regarding the ownership of said property and the date of any transfer between Southland and Edgewood." (Doc. 74.) At the June 24, 2010, hearing the court questioned

3

the plaintiffs about the ownership of the Property and their insurable interests. (*See* Doc. 78 at 1.) Minutes from the hearing note the court identified three issues, including "standing, which is critical; full info regarding each plaintiff's ability to sue RSUI does not appear to be in the record." (Doc. 78 at 2.) However, rather than proceeding on the existing record, the court gave plaintiffs another chance to provide evidence regarding entitlement to sue for RCV proceeds by supplementing their summary judgment submissions.[1]

In response to this opportunity, plaintiffs provided the sworn statement of Edward Matkom, General Counsel of Edgewood Manor's managing member, that Edgewood Manor "is the current title owner of the Property, and in accordance with the terms of the sale of the Property Edgewood LLC [i.e., plaintiff Edgewood Manor] has an interest in the proceeds that are the subject of this litigation." (Doc. 81 ¶ 13.) As to Edgewood Manor's standing plaintiffs stated:

> Edgewood Manor Apartment Homes, LLC . . . has standing to seek declaratory relief as it has an economic interest. (Matkom Aff., ¶ 13). More specifically, Edgewood LLC is the current title owner of the Property, and in accordance with the terms of the sale of the Property, Edgewood LLC has an interest in the proceeds at issue in this litigation. *Id.*

(Doc. 80 at 6-7.)

Matkom's statement avoided summary judgment as to the claims of Edgewood Manor, but just barely. Plaintiffs were still not specific about the kind of "interest" Edgewood Manor had, essentially asking the court and RSUI to accept their word that

---

[1]Fed. R. Civ. P. 56(e)(1) provides that when a party fails to properly address another party's assertion of fact the court may provide an opportunity to the party to properly support or address the fact or may grant summary judgment at that time.

Edgewood Manor was a proper party to this case.  Three pages of the March 23, 2011,

decision on plaintiffs' ability to sue, stating in part:

> During a hearing on June 24, 2010, this court asked the parties to address Edgewood Manor's standing to sue on the RSUI Policy.  Southland said it owned the Property but nothing in the record evidenced a sale or otherwise established that Edgewood Manor held any insurable interest. . . .
> . . . . Indeed, nothing in the record sufficiently showed an assignment from Southland to Edgewood Manor of any rights or proceeds under the RSUI Policy.
> At the June 2010 hearing ownership of the Property became even murkier, drawing into question whether Southland ever had an insurable interest in the Property. . . . Subsequently, plaintiffs cleared up the matter of standing as to Southland.
> Although the evidence respecting Edgewood Manor's insurable interest is thin, it exists nonetheless. . . . Attached to Matkom's affidavit is a copy of the warranty deed conveying the Property from Edgewood LP to plaintiff Edgewood Manor, dated February 12, 2008, indicating that plaintiff Edgewood Manor now owns the Property.
> RSUI points to the absence in the record of a sale agreement or other document evidencing an assignment of RSUI Policy rights or proceeds to Edgewood Manor.  While such documents would have been better evidence of Edgewood Manor's interest in the Property, Matkom avers that "in accordance with the terms of the sale of the Property Edgewood LLC [plaintiff Edgewood Manor] has an interest in the proceeds that are the subject of this litigation."  (Matkom Aff. ¶ 13.)

(Doc. 87 at 16-17.)  As mentioned earlier, the court concluded that Matkom's statement

was sufficient to withstand RSUI's motion for summary judgment but warned that "it

remain[ed] unclear whether a full assignment was made, extinguishing Southland's

interest, or whether a partial assignment or other sharing of interests occurred.  In sum,

although Southland and Edgewood Manor have shown enough at this stage for the

purpose of standing, they will have to do better at trial to sort out their respective

'interests.'" (*Id.* at 18.)

The remainder of the court's decision was premised on the assumption that an

assignment existed transferring Southland's right to RCV proceeds to Edgewood Manor.

(*See, e.g.*, *id.* at 31-34, 38 (stating that the court's belief that the Supreme Court of Mississippi "would find the assignment of Southland's right to repair or replacement proceeds to Edgewood Manor—post-loss but prior to actual repair or replacement—to be valid" and that "[a]s assignee, Edgewood Manor steps into the shoes of Southland").) This court observed that if Southland assigned all of its rights to proceeds upon the sale of the Property, it was possible RSUI owed Southland nothing at all but that "the terms of the assignment are unclear and the record does not show whether all rights to proceeds were assigned." (*Id.* at 41.) Moreover, the court noted the possibility that Southland's entitlement to RCV proceeds ended with its sale of the Property because repairs had not been made by Southland before that date. (*Id.* at 40-41.)

Thereafter, at in-court conferences on March 30 and May 5, 2011, RSUI indicated it wanted a copy of the assignment or other document determining the rights of Edgewood Manor and/or Southland to the RCV proceeds. RSUI argued that it needed to confirm that the plaintiffs were entitled to the RCV proceeds. (*See, e.g.*, Doc. 106 Ex. 1 at 5 ("We need a little bit more discovery on these issues regarding, one, whether anything was assigned, what was assigned, and what the scope of the assignment was in the transaction between Southland and Edgewood. So far we've gotten nothing on that, short of a sentence in an affidavit where somebody says we have an interest. Can't tell anything from that.").) The court questioned plaintiffs' counsel as to his knowledge of an assignment. (Doc. 106 Ex. 1 at 10, Ex. 2 at 4.) Counsel responded that he had no specifics regarding the assignment or its terms and that it was "still complicated" to him. (Doc. 106 Ex. 1 at 11.) Plaintiffs contended that the document was irrelevant because RSUI owed RCV proceeds to one of the two plaintiffs and they would work that out between themselves. (Doc. 106 Ex. 1 at

6

8, 13-14; Ex. 2 at 3-5.)  Plaintiffs huddled and in effect asked RSUI and the court to "trust them" and accept as fact that one of the two plaintiffs was entitled to the RCV proceeds. However, the court concurred with RSUI and indicated its intent to require plaintiffs to disclose to RSUI as relevant discovery the assignment or other document establishing the rights to the RCV proceeds as between the plaintiffs.  (Doc. 106 Ex. 2 at 9, 13; *see* Doc. 106 Ex. 1 at 15.)  Indeed, plaintiffs' comments at the May 5 hearing (Doc. 106 Ex. 2 at 3-4) and their recalcitrance in turning over the document—even by May 5 it had not been disclosed (Doc. 106 Ex. 2 at 3)—suggested that no such document existed, as RSUI hypothesized (Doc. 106 Ex. 2 at 7-8, 13).

Thus, as of the May 5 hearing, plaintiff's counsel understood RSUI to be taking the position that the assignment was "important because maybe they don't have an obligation to pay anybody at all."  (Doc. 106 Ex. 2 at 4.)  Counsel for RSUI argued his client's position stating, for example:  "If Southland sold the property and did not assign, and Edgewood repairs the property, Southland can't make a claim for [RCV] proceeds.  It did not incur any pecuniary loss with respect to the depreciation hold back.  That's the sticking point."  (Doc. 106 Ex. 2 at 7.)  He continued later:  "[A]bsent proof of assignment prior to or at the time of the sale, there is no obligation to pay insurance proceeds, period."  (*Id.* at 11.)

The court informed the parties on May 5 that barring some new showing by plaintiffs that the assignment was irrelevant, the assignment documents had to be disclosed to RSUI.  (Doc. 106 Ex. 2 at 9, 13.)  Then, on June 13, 2011, the court in writing ordered plaintiffs to "provide to RSUI all materials respecting the sale, assignment or transfer of rights or proceeds under RSUI's policy relevant to this action and discoverable in this case."  (Doc. 96 at 1.)

7

On June 10, 2011, with the order for disclosure imminent, plaintiffs' counsel filed a copy of an agreement titled "INSURANCE PROCEEDS DISPOSITION AGREEMENT AND AMENDMENT NUMBER EIGHT TO REAL ESTATE OFFER TO PURCHASE." (Doc. 95 attach. ("Amendment Eight").)   In the cover letter to Amendment Eight, addressed to defense counsel and filed in this case, plaintiffs' counsel represented "that this is the only relevant document related to the terms of the allocation of proceeds between Southland and Edgewood Manor."  (Doc. 95 at 1.)

Lo and behold, no assignment existed.  Amendment Eight contains no assignment of RCV proceeds to Edgewood Manor as the court determined existed for purposes of the March 23 decision.  Instead, in Amendment Eight Southland retained any right to recover RCV proceeds.  Plaintiffs now admit that no assignment occurred under Amendment Eight. (Doc. 102 at 1 (stating that Southland "has not assigned its right to receive the proceeds in the first instance"), 4 ("There is no evidence that Southland has assigned or otherwise transferred its rights to receive any insurance proceeds from RSUI.").)

With due regard for the court's interpretation of Amendment Eight, as expressed during the July 13 hearing and discussed below, Edgewood Manor has no standing to assert any rights to RCV proceeds under the RSUI insurance policy at issue in this case. Further, with Amendment Eight added to the deed submitted with the summary judgment materials, there is no dispute that upon the sale of the Property to Edgewood Manor, Southland no longer retained any rights respecting the Property and thereby held no insurable interest in the Property on the date it was repaired or replaced.

Consequently, it is perfectly clear that the issues of standing and insurable interest were not raised for the first time at the July 13 conference.   Nor were they merely

8

simmering or percolating.  By July 13 questioning the entitlement of these two plaintiffs to any RCV proceeds was a rolling boil.  Plaintiffs were well on notice of the pertinent issues.

As to the lack of specificity regarding the rule on which dismissal was based, it was not pursuant to Fed. R. Civ. P. 12, because it resulted from consideration of the pleadings and other documents of record.  Instead, it is viewed as the granting of RSUI's reopened motion for summary judgment.

Until final judgment, any order or decision "may be revised."  Fed. R. Civ. P. 54(b). Accordingly, the court took into account all the prior submissions on summary judgment plus Amendment Eight, which plaintiffs represented was the only relevant document regarding the allocation of RCV proceeds between them in rendering its oral decision. Amendment Eight addressed material facts that were still in question when the written summary judgment decision was issued.  Notably, Matkom had said Edgewood Manor had an "interest" in the RCV proceeds.  However, Amendment Eight clarified that Edgewood Manor's interest was not a legal one.  As part of its purchase of the Property, Edgewood Manor arranged for Impact Seven to possibly receive RCV proceeds, but it received no right to receive those funds itself.

Plaintiffs argue that RSUI's motion for reconsideration had to be in writing (citing to no authority for the point in their initial brief), but nothing in Rule 56 supports this assertion. *See* Fed. R. Civ. P. 56(f) (allowing the court to grant summary judgment for a nonmovant, on grounds not raised, or on its own); *Green v. Brown*, 276 F. Supp. 753, 754 n.2 (S.D.N.Y. 1967) (stating that no formal summary judgment motion papers are necessary if it sufficiently appears from other documents in the record that summary judgment is appropriate).  Federal Rule of Civil Procedure 7(b)(1)(A) provides that a motion must be

in writing "unless made during a hearing or trial," and the July 13 proceedings constituted a hearing. RSUI's failure to follow Civil L.R. 7(a) regarding citation to a specific rule and filing of a brief and Civil L.R. 56(b) regarding proposed statements of fact is not dispositive, as the local rules are for the court's benefit and do not generate entitlements for the parties. *See* General L.R. 1 ("[T]he rules are intended to be enforced primarily upon the Court's own initiative, and the filing of motions alleging noncompliance with a rule may be reserved for egregious cases."). Moreover, the court may consider summary judgment on its own after notice and identification of facts not in dispute. However, written notice is not required. Fed. R. Civ. P. 56(f); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). Here, plaintiffs were given plenty of notice of the issues of standing and insurable interest, even if they were not notified of the specific rule being invoked. Notably, standing is a jurisdictional requirement, *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011), which can be raised at any time.

Plaintiffs point to *Shockley v. Jones*, 823 F.2d 1068 (7th Cir. 1987), as support for their argument that the court acted improperly procedurally, but *Shockley* is distinguishable. Shockley's case had been pending for over three years when, on the eve of trial, the district judge dismissed it sua sponte, without notice or a hearing. *Id.* at 1070. Here, dismissal occurred at a hearing at which plaintiffs were permitted to argue their position, and for over a year plaintiffs had been on notice of RSUI's and the court's concerns regarding standing and insurable interest. Plaintiffs were not blind sided as was Shockley. Moreover, even though the Seventh Circuit found the district court's abrupt

dismissal of Shockley's case to be improper, it affirmed the dismissal because Shockley's proposed amended complaint still failed to state a claim upon which relief could be granted. *Id.* at 1073.

Here, also, reopening of the case would be futile. Plaintiffs have represented that Amendment Eight is the only document pertinent to payment of the RCV proceeds and this representation would be binding and would preclude the submission of any other documents (as discussed below). Accordingly, Amendment Eight and the warranty deed, among other documents in the record, conclusively and undisputably establish that neither plaintiff has any right to the RCV proceeds.

ALLEGED SUBSTANTIVE ERRORS

Plaintiffs' arguments on the merits of dismissal are based in part on documents brand new to this litigation, which they say are relevant to their interests in the RCV proceeds: the Real Estate Offer to Purchase; amendments one, three, and four to that real estate agreement; and Loan Agreement Number 2. All are attached as exhibits to a new affidavit of Edward Matkom. (Doc. 103.) New documents are not appropriately submitted with a Rule 59(e) motion. *See LB Credit Corp.*, 49 F.3d at 1267. Moreover, even if judgment had not yet been entered, these new documents should not be received as evidence.

In June 2011 the court ordered plaintiffs to "provide to RSUI all materials respecting the sale, assignment or transfer of rights or proceeds under RSUI's policy relevant to this action and discoverable in this case." (Doc. 96 at 1.) In response, plaintiffs turned over only Amendment Eight, accompanied by counsel's representation that "this is the only relevant document related to the terms of the allocation of proceeds between Southland

and Edgewood Manor." (Doc. 95 at 1.) Only after proceedings turned unfavorable to plaintiffs and judgment was entered did they decide that these new documents, including Loan Agreement Number 2, were relevant. That was too late.

A.    Edgewood's Claims

Although the basis for dismissing Edgewood's claims was set forth on the record at the July 13 hearing, for clarity the court will discuss the matter again.

To show standing to sue, a party must establish an invasion of a legally protected interest that is concrete, particularized, actual or imminent. *Arizonans for Official English*, 520 U.S. at 64. "Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison*, 649 F.3d at 536.

"Subject-matter jurisdiction is a synonym for adjudicatory competence." *Id.* "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Bond v. Utreras*, 585 F.3d 1061, 1069 (7th Cir. 2009).

Edgewood Manor contends that pursuant to Amendment Eight it has standing to sue RSUI for RCV proceeds relating to damage to the Property caused by Hurricane Katrina. But it does not. Amendment Eight provides that as part of the sale of the Property from Edgewood LP/Southland to plaintiff Edgewood Manor any further proceeds from the RSUI policy received *by Southland* would be donated to Impact Seven (a nonparty nonprofit) or kept by Southland (after passing through a title company). (Doc. 95 ¶ 6.) The seller, Edgewood LP, and its managing partner, Southland, granted Impact Seven a security interest in the proceeds. No mention is made of Edgewood Manor receiving insurance

12

proceeds or a security interest.  The deal by Edgewood Manor was that proceeds *received by Southland* could pass to *Impact Seven*.  Obviously, Impact Seven is not a party to this litigation, and the court's receipt of Amendment Eight was the first time the entity was mentioned in these proceedings.  At the July 13 hearing plaintiffs' counsel could point only to the provision of Amendment Eight that insurance proceeds would be distributed to a title company then to Edgewood LP/Southland as the seller and Impact Seven.  (Doc. 106 Ex. 3 at 7.)  To this day, Edgewood Manor points to no provision of Amendment Eight establishing its right to RCV proceeds.  Edgewood Manor does not factor into the transaction, except as an agent appointed by Edgewood LP and Southland to deal with RSUI on their behalf.  Acting as an agent for Edgewood LP and Southland does not entitle Edgewood Manor to any of the RCV proceeds.

Moreover, Southland and Edgewood Manor acknowledged in Amendment Eight that "the amount of any Anticipated Additional Insurance Proceeds and the timing of the payment of any Anticipated Additional Insurance proceeds are speculative, uncertain and not able to be determined at this time." (Doc. 95 ¶ 3.)  RCV proceeds would flow to Impact Seven and/or Southland *if* any RCV proceeds are received by Southland—and there might be no such proceeds.

At the July 13 hearing, counsel for plaintiffs suggested that Impact Seven was set up to receive the funds and then pass the insurance proceeds donation to Edgewood Manor.  (Doc. 106 Ex. 3 at 7.)  The statement was eyebrow-raising.  Nonprofits exempt from tax under 26 U.S.C. § 501(c)(3), for instance, are generally committed to religious, charitable, scientific, literary, educational, scientific, or similar purposes only, § 501(c)(3), and are not permitted to receive donations merely to pass them to for-profit entities.  In any

13

event, no evidence of a pass-through was in the record at the time of the hearing, so counsel's remark was disregarded.[2] But plaintiffs have argued in regard to their motion to vacate that "Impact Seven acted as a conduit for a portion of the Additional Insurance Proceeds necessary to Edgewood LLC's ability to successfully renovate the Property." (Doc. 102 at 5; *see also id.* at 2.)

Whether Impact Seven was going to provide Edgewood Manor with money corresponding to the amount it received as a donation is immaterial. Southland did not assign its right to RCV proceeds to Edgewood Manor, nor did Impact Seven for that matter, as plaintiffs now admit. (Doc. 102 at 2, 3, 4, 5.) As the court noted at the July 13 hearing, any right to RCV proceeds (if one existed) remained with Southland/Edgewood LP. (*See* Doc. 106 Ex. 3 at 25.)

Edgewood Manor is not an insured under the RSUI Policy; it could possess a right to the replacement cost proceeds only if the right had been validly assigned to it by Southland. As recognized by this court in its decision of March 23, 2011, Edgewood Manor *could have* had an interest in the RCV proceeds if Southland had assigned the proceeds to Edgewood Manor. But no such assignment was executed, leaving Edgewood Manor with no legal interest in any prospective award in this case. Southland had an assignable interest that was never assigned to Edgewood Manor. As a result, Edgewood Manor has suffered no injury caused by RSUI's failure to pay RCV proceeds regarding the Property.

---

[2]Even if the court considered the new documents attached to the new Matkom affidavit, the documents fail to establish any right of Edgewood Manor to the insurance proceeds. The previous amendments were superseded by Amendment Eight regarding section 1.12, which is the provision relating to possible RCV proceeds. The loan document states that Impact Seven "may obtain" a gift from Edgewood LP and Southland, in which case it would lend an identical amount to Edgewood Manor. (Doc. 103 Ex. H ¶ 2.) Obviously, if Impact Seven receives zero then it would lend zero. The document establishes no right of Edgewood Manor relating to Impact Seven's receipt of a donation in the first instance.

B.    Southland's Claims

The court was less specific at the July 13 hearing respecting the reason for dismissing Southland's claims, but the reason was raised by RSUI at the hearings of May 5 and July 13 and the court agreed with it.    Southland's problem is not one of standing—Southland is the insured on the RSUI Policy and is suing its insurer claiming RCV proceeds are due under that policy.  However, Southland loses on the merits because its insurable interest in the Property terminated on February 12, 2008, before it repaired or replaced the Property or RSUI repudiated its duty to pay for RCV proceeds.

"Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."  Restatement (Second) of Contracts § 225 (1981).   Thus, as discussed in the decision of March 23, 2011, RSUI owed Southland no duty to pay RCV proceeds until at the earliest March 12, 2008, assuming it repudiated its duty at that time, which would have excused the condition that the Property be repaired or replaced.  But prior to March 12, 2008, Edgewood LP/Southland deeded title of the Property to Edgewood Manor.

"Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur."  Restatement (Second) of Contracts § 225 (1981).  Southland/Edgewood LP transferred title of the Property to Edgewood Manor on February 12, 2008, before any duty on RSUI's part became due.  After that date, the condition could no longer occur, discharging RSUI's duty.

"The test of an insurable interest in real property is whether the insured has such a right, title, or interest in the property, or in relation to the property, that the insured will be benefited by its preservation and continued existence or suffer a direct pecuniary loss from

15

its destruction or injury by the peril insured against." Steven Plitt, 3 *Couch on Insurance 3d* § 41:12 (rev'd ed. 2011). Any status of ownership or possession, combined with an economic interest, may support a finding of insurable interest. *Id.* § 41:13. Generally, when property is sold, the insured former owner's insurable interest in the property ends. *See State Farm Fire & Cas. Co. v. Ramsey*, 719 F. Supp. 1337, 1341 (S.D. Miss. 1989) ("[I]t is clear that after the foreclosure sale . . . Tower was the sole owner of the dwelling and neither Georgia Ramsey nor Willie Ramsey had an insurable interest in the property. Consequently, neither is entitled to recover under the dwelling provisions of the subject policy."). Although holding title is not always required to maintain an insurable interest, some economic interest in the property or the titleholder is required. *See Se. Fid. Ins. Co. v. Gann*, 340 So. 2d 429, 433 (Miss. 1976) (finding that although title was held by a country club, the club's president and manager, who created the club with others, financed the club's building through funds he borrowed personally, and paid off the indebtedness against the building after fire loss, held an insurable interest).

The extinguishing of an insurable interest after issuance of a property insurance policy bars recovery in the event the property is later destroyed. Jeffrey Jensen, *Miss. Ins. Law & Practice* § 4:13 (2011). "For example, following a completed sale, the seller of realty has no insurable interest in the property." *Id.*; *see Camden Fire Ins. Ass'n v. Koch*, 63 So. 2d 103, 105 (Miss. 1953) ("Nor did Mrs. Bond [who had sold the property to Koch two months before a fire] as the insured named in the policies have an insurable interest in the property at the time of the loss.").

Insurance "is intended to allow a transfer of risk from the insured to the insurer. . . . In property insurance, for example, in the event of a loss covered by the policy, the insurer

indemnifies the insured to the extent of the loss." Jensen, *supra*, § 4:1. An insured's right to recover proceeds should not exceed the value of the insured's interest in the property; the insurer compensates for no more than what was lost. *Id.*; *see also i.d* § 4:12 ("The purpose of property insurance is indemnity—to compensate persons for the economic loss that occurs."); *Paluszek v. Safeco Ins. Co. of Am.*, 517 N.E.2d 565, 568 (Ill. Ct. App. 1987) ("The proceeds of an insurance contract are indemnity for actual loss sustained by the insured.").

The purpose of replacement cost coverage is to reimburse an insured for the full cost of repairs or replacement if the insured repairs or rebuilds the property. *See* Jeffrey E. Thomas & Susan Randall, 5 *New Appleman on Ins. Law Library Ed.* § 47.04[2][b][1] (LexisNexis 2011). While an insured may assign to another its right to incur and be reimbursed for replacement costs, there is no reason for the insurer to reimburse the insured for such costs if those costs are not borne not by the insured but instead by a nonassignee buyer after sale of the property. The insured has expended nothing so nothing should be reimbursed.

Although Southland held an insurable interest in the Property at the time of Hurricane Katrina, i.e., at the time of the loss, the undisputed documents in the record establish that it failed to maintain an insurable interest in the Property subsequent to sale.[3] Further, the undisputed evidence in the record fails to show that Southland expended any money in repairing or replacing the Property.

---

[3]Southland argues in its reply brief that it "has" an insurable interest in the Property. (Doc. 107 at 9.) But it "had" an insurable interest, which terminated upon sale.

It appears that any such costs were incurred by another entity (presumably Edgewood Manor, but the identity of the party is immaterial, except to the extent it was not Southland or an assignee). As in the example given by RSUI at the May 5 and July 13 hearings (Doc. 106 Ex. 2 at 6, Ex. 3 at 19), an insured cannot sell a property that was destroyed by fire during the term of a policy, drive by six months or a year later and see that the building was replaced by the buyer, then claim replacement cost insurance proceeds from its insurer because the buyer rebuilt the property.

Southland and Edgewood LP sold the Property to Edgewood Manor before starting repair or replacement of the Property following Hurricane Katrina. The warranty deed and Amendment Eight reflect no right of Southland or Edgewood LP to the Property, nor did they create any obligation on the part of Southland to complete repairs or replacement on the Property. Further, the RSUI Policy, by incorporating the Westchester Policy, stated that RSUI would not pay Southland more than its financial interest in the Property. (*See* Doc. 1 at 50 of 65.)

As discussed in the March 23, 2011, decision, had Southland assigned to Edgewood Manor its right to repair or replacement, the latter would have stepped into Southland's shoes and been able to complete the repairs and replacement and to obtain the RCV proceeds. The lack of an assignment to Edgewood Manor, however, does not result in Southland automatically retaining the right to RCV proceeds in the event Edgewood Manor repaired or replaced the Property. The purpose of repair and replacement proceeds is to reimburse the insured for the additional costs to repair or replace the building above the depreciated value. When the insured incurs no such costs then no reimbursement is due.

18

Plaintiffs contend that the insurance policy does not require that the insured make the repairs or replacement. True enough, as the court noted in its March 23, 2011, decision. But that does not mean that Southland retained an indefinite right to recover RCV proceeds when a third party to the insurance policy bought and repaired the Property. Repair and replacement costs had to be incurred by Southland or its assignee for Southland or its assignee to recover. But neither occurred here. The costs could not be incurred by some third party after Southland terminated all of its interest in the Property.

*Paluszek* is on point. A homeowner sold her residence "as is" after a fire loss but before she had the premises repaired or replaced. The insurer paid actual cash value but refused to pay RCV proceeds. The policy did not expressly state that the insured was to make the repairs for the insurer to be liable for RCV proceeds. Nevertheless, the court found that the insurer did not have to pay RCV proceeds to the seller for repairs to the home performed and paid for by the purchaser after sale:

> If we allowed the insured to profit from her insurance, we would contravene the very fundamentals of insurance law. We believe that the provision requires that repairs be made by the insured, this being the only result consistent with the goal of indemnification for actual loss suffered.
>
> We believe that this case should be governed by fundamental principles of property insurance. Property insurance is not insurance on the property itself, but rather on the interest of the person insured.

517 N.E.2d at 568.

To the extent that *Paluszek* is contradicted by *Ruter v. Northwestern Fire & Marine Insurance Co.*, 178 A.2d 640 (N.J. Super. Ct. App. Div. 1962), this court finds the holding of *Paluszek* to be better law and the law that the Supreme Court of Mississippi would follow. Moreover, *Ruter* is distinguishable because the seller held a mortgage for the

19

purchase price.  *See id.* at 641.  Thus, she retained an economic interest in the property.  Here, plaintiffs provided no evidence of any continued economic interest of Southland in the Property, though they had several chances to do so.

*Ayers v. State Farm Fire & Casualty Co.*, No. 1:06CV1261 LTS-RHW, 2007 WL 1378401 (S.D. Miss. May 7, 2007), also does not help Southland.  In that case, Ayers had assigned part of any homeowners insurance policy proceeds from damage caused by Hurricane Katrina to the Small Business Administration to offset the amount he would repay for a disaster loan.  State Farm argued that SBA, not Ayers, was the real party in interest for purposes of bringing suit.  The court disagreed;  Ayers was permitted to bring the action for insurance proceeds.  However, unlike Southland, Ayers retained ownership of the property and the right to some of the insurance proceeds.  Moreover, the case did not involve RCV proceeds or refer to any condition precedent that had not been met at the time of the decision.

Southland contends that RSUI will receive a windfall if it avoids paying RCV proceeds in this case.  But if RCV proceeds are paid, Southland would receive a windfall.  *See Paluszek*, 164 Ill. App. 3d at 518 ("Plaintiff, however, elected to sell the home and now is attempting to collect for repairs she did not make.  To make this additional payment for repairs would result in a profit to the insured.").

Southland sold the property before satisfying a required condition precedent and before RSUI's anticipatory breach could have excused the condition.  Had Southland assigned its right to fulfil the condition precedent to Edgewood Manor, RSUI's obligation would have continued.  Had Southland waited about a month and RSUI's anticipatory breach occurred while Southland still owned the Property, RSUI might still be on the hook.

But the undisputed facts of this case now show that neither of those possibilities occurred and that, instead, RSUI's obligation to reimburse Southland for repair or replacement costs terminated upon the sale of the Property to Edgewood Manor. Consequently,

IT IS ORDERED that plaintiffs' motion to vacate judgment (Doc. 100) is denied.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE